1

2

3          FILED IN THE
           U.S. DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON

           Oct 22, 2021

           SEAN F. McAVOY, CLERK
4

5              UNITED STATES DISTRICT COURT
6              EASTERN DISTRICT OF WASHINGTON

7    SHAWNA W.,[1]                         No.    4:20-cv-5150-EFS
8                          Plaintiff,
                                           **ORDER GRANTING PLAINTIFF'S**
9        v.                                **SUMMARY-JUDGMENT MOTION**
                                           **AND DENYING DEFENDANT'S**
10   KILOLO KIJAKAZI, Acting               **SUMMARY-JUDGMENT MOTION**
     Commissioner of Social Security,[2]
11
12                         Defendant.

13           Plaintiff Shawna W. appeals the denial of benefits by the Administrative

14   Law Judge (ALJ). Because the record reflects that Plaintiff is clearly unable to

15   sustain fulltime work, this matter is remanded for immediate payment of benefits.

16   Accordingly, the Court grants Plaintiff's Motion for Summary Judgment, ECF

17

18   _____

19   [1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

20   first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

21   [2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security.

22   She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42

23   U.S.C. § 405(g).

     ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

No. 21, and denies the Commissioner's Motion for Summary Judgment, ECF No. 25.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

[7] *Id.* § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

substantial gainful activity.[10] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant can perform past work, benefits are denied.[13] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.

---

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

[14] *Id*. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

## II.    Factual and Procedural Summary

2

Plaintiff filed a Title 16 application, alleging a disability onset date of July 1,

3

2017.[17] Her claim was denied initially and on reconsideration.[18] An administrative

4

hearing was held before Administrative Law Judge Caroline Siderius.[19]

5

When denying Plaintiff's disability claim, the ALJ found:

6

• Step one: Plaintiff had not engaged in substantial gainful activity

7

since August 24, 2017, the application date.

8

• Step two: Plaintiff had the following medically determinable severe

9

impairments: status-post left ankle fracture, osteoarthritis of the right

10

knee, degenerative disc disease, obesity, panic disorder, and

11

depression.

12

• Step three: Plaintiff did not have an impairment or combination of

13

impairments that met or medically equaled the severity of one of the

14

listed impairments.

15

• RFC: Plaintiff had the RFC to perform light work except:

16

stand/walk up to 4 hours a day for 30 minutes at a time.
[She] cannot climb ladders, ropes, and scaffolds; occasionally

17

climb stairs/ramps, one flight at a time. She cannot crawl or
kneel, and can occasionally crouch and stoop. The claimant

18

should not work on uneven surfaces, and should avoid
concentrated exposure to extreme cold. The claimant can

19

20

21

[17] AR 202–19.

22

[18] AR 109–17, 121–27.

23

[19] AR 35–60.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

only have superficial brief contact with public and occasional contact with co-workers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that exists in significant numbers in the national economy, such as photocopying machine operator, office helper, and ticket taker.[20]

When assessing the medical-opinion evidence, the ALJ found:

- the reviewing opinion of Michael Regets, Ph.D., and the examining opinion of Lynn Orr, Ph.D., persuasive.

- the examining opinion of James Opara, M.D., and the reviewing opinion of Howard Platter M.D., persuasive, except for their opinions as to Plaintiff's manipulative limitations.

- the reviewing opinion of Renee Eisenhauer, Ph.D., less persuasive.

- the treating opinion of Maria Ello, M.D., unpersuasive.[21]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[20] AR 13–31.

[21] AR 23–25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

not entirely consistent with the medical evidence and other evidence.[22] Likewise, the ALJ discounted the lay statements from Plaintiff's friends.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[22] AR 21–23.

[23] AR 23.

[24] AR 1–11.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.**

Plaintiff contends the ALJ erred at step two by failing to consider fibromyalgia as a severe impairment. The Commissioner concedes the ALJ did not discuss Plaintiff's fibromyalgia but argues any error was harmless because Plaintiff fails to show that her fibromyalgia caused any limitations that were not already accounted for by the RFC.

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to consider the entire record, not simply the evidence cited by the ALJ or the parties); *see also Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (cleaned up).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[33] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe. [34]

Neither a claimant's statement of symptoms, a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[35] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment, the ALJ must then determine whether that impairment is severe.[36] "The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is 'not severe.'"[37] A medically determinable impairment is *not* severe if, and only if, the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[33] 20 C.F.R. § 416.920(c).

[34] *Id.* § 416.920(a)(4)(ii).

[35] *Id.* § 416.921.

[36] *See* Social Security Ruling (SSR) 85-28 at *3 (1985).

[37] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

work."[38] Therefore, an impairment is not severe if it has no more than a minimal effect on a claimant's physical or mental ability to do basic work activities, which include the following: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling.[39]

Because step two is simply a "screening device [used] to dispose of groundless claims,"[40] "[g]reat care should be exercised in applying the not severe impairment concept."[41] Step two "is not meant to identify the impairments that should be taken into account when determining the RFC," as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[42]

Here, the ALJ found Plaintiff has the severe impairments of status-post left ankle fracture, osteoarthritis of the right knee, degenerative disc disease, obesity, panic disorder, and depression.[43] The ALJ also found that Plaintiff's injury to her left shoulder, right hip, and right foot are non-severe impairments. Yet, the ALJ

---

[38] *Id.*

[39] 20 C.F.R. § 404.921(a) (2010); *see* SSR 85-28 at *3.

[40] *Smolen*, 80 F.3d at 1290.

[41] SSR 85-28 at *4.

[42] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[43] AR 18.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1
2

did not discuss whether fibromyalgia is a severe impairment, nor did the ALJ

mention fibromyalgia in the entire opinion.

3
4

This was error. Medical records reflect that based on objective signs Plaintiff

5

was diagnosed and treated for fibromyalgia.[44] For instance, in June 2017, Stephen

6

Dechtor, D.O., noted, "fibromyalgia tender points grossly positive in various soft

7

tissue locations with diffuse muscle aches present."[45] He noted that at her last

8

appointment he provided Plaintiff with a prescription for EMLA cream,

9

cyclobenzaprine, and Cymbalta for her fibromyalgia and lumbar and knee

10

conditions.[46] The record reflects that her fibromyalgia history began in 2006.[47] And

11

it likely continued through at least November 2018, as a treatment note that

12

month states, "Unfortunately, [patient] is difficult to examine with her [history] of

13

fibromyalgia and chronic pain. She has tenderness wherever palpation occurs."[48]

14

The objective medical evidence reflects more than a diagnosis of fibromyalgia:

15
16

[44] SSR 12-2p, Evaluation of Fibromyalgia (2012); *Revels v. Berryhill*, 874 F.3d 648,

17

656 (9th Cir. 2017).

18

[45] AR 385.

19

[46] AR 385, 381–32. *See also* AR 420 (April 2017: "It is very likely the patient will

20

have chronic pain given the history of this [foot] fracture as well as her history of

21

fibromyalgia.").

22

[47] AR 509, 575.

23

[48] AR 554.

Plaintiff's providers conducted physical examinations and found widespread tenderness in both June 2017 and November 2018.[49] Moreover, both the consultative examiner, Dr. Opara, and the reviewing physician, Dr. Platter, found fibromyalgia to be a severe impairment.[50] On this record, the ALJ erred by not finding fibromyalgia as a severe impairment.[51]

The Commissioner submits any such error was harmless because the ALJ's sequential evaluation—and the RFC—considered the impact of Plaintiff's fibromyalgia. When an ALJ resolves step two in a claimant's favor by finding a medically determinable severe impairment, any error in failing to find other severe impairments is harmless at step two; however, step-two error can be harmful at a later step in the sequential disability analysis.[52] Here, the ALJ did not articulate how the sequential evaluation considered the impact of Plaintiff's fibromyalgia—

---

[49] *See* 20 C.F.R. § 404.1521 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").

[50] AR 87–105, 508–13.

[51] 20 C.F.R. § 404.1521.

[52] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the decision did not even mention fibromyalgia. Moreover, when crafting the RFC, the ALJ "considered all symptoms" of "underlying medically determinable physical or mental impairment(s)."[53] Because the ALJ did not identify fibromyalgia as an impairment, the ALJ did not consider Plaintiff's fibromyalgia when assessing the RFC or when weighing Plaintiff's statements about the intensity, persistence, and limiting effects of her fibromyalgia symptoms, which she testified were separate from her knee and hip pain.[54] Because the ALJ did not consider Plaintiff's fibromyalgia during the later sequential steps, the step-two error was not harmless.[55]

Finally, the Commissioner argues Plaintiff waived any argument that the ALJ erroneously rejected her fibromyalgia-related limitations from the RFC because Plaintiff raised no challenge to the ALJ's evaluation of the medical

---

[53] AR 20–21.

[54] AR 52.

[55] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ asserts); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

1
2
3
4

evidence.[56] The Court finds otherwise. Even though Plaintiff did not challenge the ALJ's weighing of a medical opinion, Plaintiff's step-two, step-three, symptom-complaint, and RFC arguments inherently challenge the ALJ's failure to consider the medical evidence and other evidence related to her fibromyalgia.

**B.    Remand for an Award of Benefits.**

5
6

Plaintiff submits a remand for payment of benefits is warranted.

7
8
9
10
11
12

The decision whether to remand a case for additional evidence, or to simply award benefits, is within the Court's discretion.[57] Remand for further proceedings is the usual course, absent clear evidence from the record that a claimant is entitled to benefits.[58] For instance, where "there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary."[59]

13
14
15

Here, the fully developed record clearly establishes disability. By not considering the impacts of fibromyalgia, which are distinct from those caused by

16

---

17

[56] ECF No. 25 at 5–6.

18
19

[57] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

20
21
22

[58] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

23

[59] *Leon*, 880 F.3d at 1047.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1    Plaintiff's other severe impairments, the ALJ failed to adequately consider the

2    medical evidence and erred by discounting the distinct fibromyalgia-related

3    symptoms that both Plaintiff and her friend reported, and which were reflected on

4    Dr. Ello's evaluation and in the medical record.

5        When Plaintiff's testimony and that of her friend are credited as true, the

6    record reflects that Plaintiff is unable to sustain work due to pain and other

7    functional limitations, which result in a need to take excessive breaks or

8    absences.[60] The vocational expert testified that if Plaintiff has to elevate her legs

9    on average 4–6 times per day for 15–45 minutes each time or be absent more than

10   one day per month, competitive employment is precluded.[61] Moreover, four years

11   have passed since Plaintiff applied for benefits. This case merits remand for an

12   immediate calculation of benefits.[62]

13   **C.    Conclusion**

14       Accordingly, **IT IS HEREBY ORDERED**:

15       1.    The case caption is to be **AMENDED** consistent with footnote 2.

16       2.    Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

17

18

19

20   [60] *See, e.g.*, AR 508–13, 517–21, 535–38, 547–56, 567–68.

21   [61] AR 58–59.

22   [62] *See* 42 U.S.C. § 405(g) (permitting the court to reverse the Commissioner's decision

23   without remanding for a rehearing).

3.  The Commissioner's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

4.  The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

5.  The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 22nd  day of October 2021.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge